IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GIANNI CLAUDIO BARLETTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV368 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Gianni Barletta ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for Disability Insurance Benefits on May 24, 2014, alleging a disability onset date of October 28, 2013. (Tr. at 19, 176-82.)[2] His claim was denied initially (Tr. at 71-85, 103-11), and that determination was upheld on reconsideration

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

(Tr. at 86-98, 118-25). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 126.) Plaintiff attended the subsequent hearing on July 16, 2015, along with his non-attorney representative and an impartial vocational expert. (Tr. at 19.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30-31), and, on February 19, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from three severe impairments: major depressive disorder, generalized anxiety disorder, and ADD/ADHD. (Tr. at 21.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 22-23.) As part of the determination at step three, the ALJ determined that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

pace. The ALJ then assessed Plaintiff's RFC and determined that physically, Plaintiff could perform a full range of work at all exertional levels. However, due to his mental impairments, the ALJ determined that

> [m]entally, the claimant is limited to simple, routine, repetitive tasks, with interactions with others on an occasional and basic level; the claimant requires a work environment which does not have a rapid pace, and no multiple deadlines; and which does not have noise or constant distractions.

(Tr. at 23.)

Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 29.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 30.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 30-31.)

Plaintiff now challenges the ALJ's decision on two bases. First, Plaintiff contends that the ALJ failed "to evaluate the opinions of Plaintiff's treating mental health providers in accordance with Agency policy and Fourth Circuit precedent." (Pl.'s Br. [Doc. #12] at 2.) Second, Plaintiff argues that the RFC in this case fails to adequately encompass the ALJ's finding of moderate limitations in concentration, persistence, and pace at step three of the sequential analysis as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Id.)

A.  Treating Physician Opinions

Plaintiff first challenges the ALJ's failure to assign controlling weight to the opinions of Plaintiff's treating mental health providers in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ

6

to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c) and 416.927(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p, at *5 (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific

7

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[5]

As Plaintiff notes, the record in the present case contains medical opinion evidence from three sources: Plaintiff's treating psychiatrist, Dr. Mojeed Akintayo; a treating nurse practitioner in the same practice, Crystal Montague, FNP-C; and the non-examining state agency consultant. Plaintiff now challenges the ALJ's assignment of significant weight to the opinion of the state agency consultant and only partial weight to the treating providers' opinions.

On October 21, 2014, Dr. Akintayo completed a three-page checklist questionnaire addressing Plaintiff's depression. This questionnaire, provided by Plaintiff's attorney, asked Dr. Akintayo to check yes or no as to whether Plaintiff exhibited each of the symptoms set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(A) of the Social Security regulations, better known as the paragraph A criteria of Listing 12.04 for affective disorders.[6] (Tr. at 517-19.) Dr. Akintayo indicated that Plaintiff experienced depressive syndrome exhibited by five of the nine enumerated symptoms. (Tr. at 517.) On the next page, he indicated that Plaintiff did not suffer from manic syndrome; nevertheless, when asked if Plaintiff's syndrome was characterized by any of a list of eight symptoms, he checked yes as to "flight of ideas" and

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

[6] These regulations have since been amended, effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016).

"easy distractibility." Dr. Akintayo also checked yes when asked if Plaintiff "suffer[s] from bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." (Tr. at 518.)

On the same day, Dr. Akintayo completed a similar questionnaire regarding Plaintiff's anxiety. This questionnaire first asked Dr. Akintayo to check yes or no as to whether Plaintiff exhibited each of the symptoms set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.06(A), i.e., the paragraph A criteria of Listing 12.06 for anxiety related disorders.[7] (Tr. at 514.) Dr. Akintayo indicated that Plaintiff exhibited generalized persistent anxiety accompanied by "apprehensive expectation." Dr. Akintayo also checked yes when asked if Plaintiff exhibited "a persistent irrational fear of a specific object, activity, or situation" and experiences "recurrent severe panic attacks . . . on the average of at least one a week." (Tr. at 514.) Mirroring the paragraph B criteria of the mental listings, the form then instructed Dr. Akintayo to indicate the degree to which Plaintiff's mental disorder affected his functional limitations. (Tr. at 515.) Dr. Akintayo indicated marked restrictions in all four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The form further defined "marked" impairment as "impairment which seriously affects [the] ability to function independently, appropriately[,] and effectively." (Id.) Although both forms provided a section for remarks, Dr. Akintayo left these blank. (Tr. at 516, 519.)

---

[7] These regulations have also been amended, effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Federal Register 66138-01, 2016 WL 5341732 (Sept. 26, 2016).

More than eight months later, on July 2, 2015, Crystal Montague completed a "Mental Health Questionnaire" encompassing all of Plaintiff's mental impairments, which she identified as "major depressive disorder, generalized anxiety disorder, narcolepsy without cataplexy, attention deficit disorder without hyperactivity, and post-traumatic stress disorder." (Tr. at 634.) Ms. Montague checked boxes on a form indicating that Plaintiff's depressive syndrome was exhibited by the same five symptoms identified by Dr. Akintayo. (Tr. at 517, 634.) Also like Dr. Akintayo, Ms. Montague indicated that Plaintiff did not experience manic syndrome despite being easily distractible. (Tr. at 518, 634.) In terms of anxiety, Ms. Montague checked "motor tension," "apprehensive expectation," and "vigilance and scanning" as symptoms, and further checked boxes indicating that Plaintiff experienced "persistent irrational fear," "severe panic attacks . . . on the average of at least once a week," and "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." (Tr. at 634-35.) She checked boxes identifying other symptoms as "poor memory"; "oddities of thought, perception, speech, or behavior"; "time or place disorientation"; and "social withdrawal or isolation". She also indicated that other symptoms included extreme paranoia; anxiety; depression; social phobia; agoraphobia; and nightmares/flashbacks. (Tr. at 635.) When then asked to describe clinical findings demonstrating the severity of Plaintiff's mental condition, Ms. Montague wrote that Plaintiff "is alert and oriented to person, place, and time. His grooming is somewhat appropriate, and his attention/concentration is poor, easily distracted, inattentive. His mood is dysthymic/dysphoric, tearful crying, extremely anxious. He trembles and his voice is prosodic. He is unable to sit in the waiting area without being fearful of other people." (Tr. at 635.) Ms.

Montague noted that Plaintiff's described symptoms and limitations began prior to February 2014.

The next section of the questionnaire asked Ms. Montague to rate the degree of Plaintiff's functional limitations in the four areas set out in paragraph B of the listings. She opined that Plaintiff was moderately limited in terms of activities of daily living but extremely limited in the remaining three areas, with "extreme" defined as "severe impairment of ability to function." Finally, she estimated that, as a result of Plaintiff's impairments, he would miss more than four days of work per month. As instructed on the questionnaire, Dr. Akintayo cosigned Ms. Montague's opinion. (Tr. at 636.)

The ALJ gave only partial weight to the above statements, noting that they were "essentially 'check off' forms." (Tr. at 29.) Nevertheless, the ALJ noted that "Dr. Akintayo and Ms. Montague are treating sources, and their opinions must be given very careful consideration," and that "[m]edical source statements obtained from representatives using their own formats are not automatically suspect." She further noted that "[s]ome of the many symptoms of anxiety and mood disorders reported on these questionnaires by Dr. Akintayo and Ms. Montague are documented in the record." However, the ALJ further found that

> [the] opinions of the nurse practitioner and of Dr. Akintayo regarding the severity of the claimant's work-related mental functional limitations are out of proportion to the majority of the evidence of record, including treatment records from Monarch, Moses Cone Behavioral Health, and some of their own mental examinations of the claimant at Neuropsychiatric Care (Exhibits 1A, 3A, 3F, 5F, 13F, 14F). Further, there were some inconsistencies in these reports regarding the claimant's diagnoses and symptoms, as described above in section #5 of this decision.

(Tr. at 29.) Specifically, the ALJ noted that

> Dr. Akintayo reported on October 21, 2014, that the claimant did not have symptoms of a manic syndrome; but then later stated in the same form, on the same page, that the claimant did have symptoms of such a manic syndrome, and he added that the claimant suffered from a bipolar syndrome (Exhibit 11F-2). Further, in the mental health questionnaire dated July 2, 2015, from Ms. Montague, and countersigned by Dr. Akintayo, it was reported that the claimant did not have a manic syndrome.

(Tr. at 27-28.)

Moreover, section 5 of the decision, as referenced by the ALJ, contains a nearly month-by-month account of Plaintiff's mental health treatment during the period at issue, cataloging Plaintiff's conditions, symptoms, and changes in severity over time from a detailed review of the medical record. (Tr. at 24-27.) The ALJ further analyzed this evidence as follows:

> The undersigned fully acknowledges that the claimant has a history of treatment for mood and anxiety disorders and ADD since early 2013. The results of psychiatric examinations from that time through mid-2015 are mixed. However, the claimant's symptoms generally responded at least fairly well to psychotropic medication, when the claimant was fully compliant with his treatment regimen. The results of mental status examinations during psychiatric examinations through December of 2013 were, with some exceptions, mostly unremarkable. In July of 2013, the claimant apparently abruptly stopped taking his medications, which resulted in an apparent seizure.

(Tr. at 27.) In fact, the record reflects numerous occasions on which Plaintiff discontinued medications without medical consultation or requested to stop effective medications for various reasons, all of which negatively impacted his mental condition. (Tr. at 24, 26, 27, 452 ("Pt. has been less than respons[ible] in taking meds & again is here to 'jump back on his meds' including Ritalin & Xanax") (Dec. 17, 2013), 453 ("when he takes his meds, they work well for him") (August 21, 2013), 454 (noting that Plaintiff had several seizures because he ran out of his medications) (July 24, 2013), 490, 583, 585, 587, 589, 591.)

The ALJ went on to explain that

> [d]uring the initial consultation with his current psychiatrist in February of 2014, the claimant had a GAF of 50-60, and his symptoms were described as moderate. . . . The claimant's overall mental condition appeared to improve through August of 2014. . . . His symptoms worsened beginning in October of 2014, but part of this appeared to be due to the death of his father, and a diagnosis of cancer for his mother. There appeared to be some improvement from February of 2015 through early May of 2015. The claimant reported some improvement on May 7, 2015, and his symptoms were described as moderate by his psychiatrist.
>
> However, as of June 4, 2015, the claimant had reported more depression, and additional worsening of several symptoms of anxiety and mood, although his symptoms were still described as moderate.
>
> The undersigned notes that as the date of the hearing approached, the claimant's symptoms apparently worsened, although his psychiatrist still described them as moderate in nature.

(Tr. at 27.) In making this analysis, the ALJ emphasized the consistent characterization of Plaintiff's symptoms as moderate, and therefore inconsistent with the marked and extreme findings included in the same providers' opinions. The ALJ's analysis also factored in the variability of Plaintiff's condition over time in contrast to the opinions of Dr. Akintayo and Ms. Montague, which were issued at specific points in time.

Thus, the ALJ found that the opinions from Dr. Akintayo and Ms. Montague were not well supported and were inconsistent with other substantial evidence in the case record, and the ALJ therefore did not give them controlling weight. The ALJ then further provided specific reasons for giving the opinions only partial weight: they were "essentially 'check off' forms" with no substantive analysis or explanation; they were forms "provided by the claimant's attorney"; they were "out of proportion to the majority of the evidence of record" including their own treatment records; and they contained internal inconsistencies regarding

13

Plaintiff's diagnoses and symptoms. The ALJ thus provided a sufficient explanation for the determination, and that determination is supported by substantial evidence.

In a related argument, Plaintiff contends that the ALJ erroneously assigned significant weight to the opinions of the state agency consultant. With respect to the state agency consultants, the ALJ found as follows:

> The state agency psychiatric consultant, Bonny Gregory, MD, determined on March 11, 2015 that the claimant could perform simple, routine, repetitive tasks (Exhibits 3A-9-10). The undersigned has given the opinion of Dr. Gregory significant weight. Her assessments are supported by the totality of the relevant evidence of record.

(Tr. at 28-29.) Plaintiff contends that the findings that the ALJ attributed to Dr. Gregory were, in fact, the findings of another state agency consultant, Lori Brandon Souther, Ph.D. (Tr. at 82, 94.) On July 31, 2014, as part of Plaintiff's initial disability determination, Dr. Souther opined that Plaintiff was "capable of performing SRRTs in a stable, low-stress environment with minimal social demands." (Tr. at 82.) Dr. Souther also noted that with respect to Plaintiff's understanding and memory, "[a]lthough there are some limitations, the clmt appears capable of remembering and following simple instructions." (Tr. at 81.) With respect to Plaintiff's sustained concentration and persistence limitations, Dr. Souther found that "[a]lthough there are some limitations in attention/concentration, the clmt appears capable of sustaining concentration to perform SRRTs." (Tr. at 81.) With respect to Plaintiff's social interaction limitations, Dr. Souther explained that "[a]lthough there are some limitations secondary to [mental health symptoms], the clmt appears to be capable of performing work in a setting with minimal social demands." (Tr. at 82.) Finally, with respect to Plaintiff's adaptation limitations, Dr. Souther concluded that "[a]lthough there are some limitations with

frustration tolerance, the clmt appears to have the capability of performing work in a stable, low-stress environment." (Tr. at 82.) Several months later, the case came before Dr. Bonny Gregory, MD, on reconsideration. Dr. Gregory recounted Dr. Souther's earlier findings, including that "[c]lmt has shown good improvement with recent meds/tx" and "[t]here are some limitations, but the clmt appears capable of performing SRRTs in a low-stress setting with minimal social demands. SEE MRFC." (Tr. at 94.) Dr. Gregory noted that she had attempted to contact Plaintiff's representative to obtain updated information, but received no response and was ultimately unable to procure updated medical records through Plaintiff's representative. Therefore, on March 11, 2015, she concluded that there was "insufficient evidence to evaluate the claim" on reconsideration. (Tr. at 94-95.) The reconsideration determination was therefore made based on the explanation provided at the initial review and 20 C.F.R. § 404.1516, which provides that "[i]f you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case." (Tr. at 96.)

Plaintiff contends that the ALJ erroneously assigned significant weight to the opinion of Dr. Gregory, since Dr. Gregory concluded only that there was insufficient evidence. Defendant counters that any such error was simply a scrivener's error, as the ALJ was clearly referring to the determination by Dr. Souther, which was summarized by Dr. Gregory. In considering these contentions, the Court notes that the page of the exhibit cited by the ALJ explicitly recounts the findings on which the ALJ relied, based on Dr. Gregory's summary of Dr. Souther's conclusion. (Tr. at 94.) In the circumstances, there does not appear to be any error or ambiguity, as Dr. Gregory recounted the findings of Dr. Souther, and the ALJ relied

15

on those findings and that determination. Moreover, even if the ALJ intended to refer back to Dr. Souther's opinion directly, any such error was harmless. It is clear that the restrictions suggested by Dr. Souther, and summarized by Dr. Gregory, are the restrictions relied upon by the ALJ. In the circumstances, the Court concludes that substantial evidence supports the ALJ's determination, and the ALJ's reliance on the state agency consultants does not require remand.

Finally, the Court notes that Plaintiff raises additional contentions regarding the evidence and essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, explained the reasons for the weight she gave to the opinion evidence, and supported that explanation with substantial evidence.

B. Mascio

Plaintiff next challenges his RFC assessment, arguing that the mental limitations in the RFC fail to comply with Social Security Ruling ("SSR") 96–8p and the Fourth Circuit's

16

decision in Mascio v. Colvin, 780 F.3d 632. Specifically, Plaintiff argues that the RFC fails to properly account for his moderate limitations in concentration, persistence, or pace. In Mascio, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

Here, as in Mascio, the ALJ found Plaintiff moderately limited in terms of concentration, persistence, or pace at step three of the sequential analysis. However, the RFC in the present case is distinguishable in that it includes additional limitations which specifically address Plaintiff's deficits. In particular, the ALJ found that Plaintiff requires "a work environment which does not have a rapid pace, and no multiple deadlines; and which does not have noise or constant distractions." (Tr. at 23.) In addition, this case is distinguishable in that the ALJ provided a specific explanation regarding Plaintiff's limitations in concentration, persistence, and pace, and how those limitations were reflected in the RFC. The ALJ noted that Plaintiff "is clearly unable to maintain concentration and attention in a

17

skilled, detailed, or complex work setting. However, he has above average intelligence, no cognitive or intellectual disorders, education beyond high school, and a history of skilled work." (Tr. at 28.) The ALJ therefore concluded that Plaintiff "should be able to function in an unskilled, simple, work setting." (Id.) The ALJ also noted that Plaintiff apparently worked in 2014, after his alleged onset date, and that his "capacity for attention and concentration improved during periods of medication compliance." (Tr. at 23.) In short, the ALJ not only formulated an RFC addressing Plaintiff's ability to stay on task, his concentration and attention difficulties, and his pace, but also included an explanation in her decision with respect to the extent of the limitations in question and how those were reflected in the RFC. Accordingly, the Court finds no error under Mascio.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 2nd day of August, 2017.

                                                  /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge